**IN RE : T.H.,[1] Debtor.**

**Case No. 13–73077–SCS**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Signed March 18, 2015

---

1. The Debtor's name in the caption and throughout the Memorandum Opinion is abbreviated as T.H. because the case was expunged and the record of the case was sealed. The Order Granting Motion to Expunge Bankruptcy Filing was entered July 18, 2014. Docket No. 30.

Peter F. Zooberg, Law Office of Philip R. Boardman PC, Hampton, VA, for Debtor.

## MEMORANDUM OPINION

STEPHEN C. ST. JOHN, Chief United States Bankruptcy Judge

This matter came before the Court upon the Amended Motion to Impose Sanctions under 11 U.S.C. § 105 against Peter F. Zooberg, Esquire, and the Law Office of Philip R. Boardman, P.C., (the "Amended Motion to Impose Sanctions") filed on May 1, 2014, by Judy A. Robbins, United States Trustee for Region Four. Docket No. 19. At the conclusion of the evidentiary hearing held on October 29, 2014, the Court took this matter under advisement. The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). This Memorandum Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated into the Federal Rules of Bankruptcy Procedure by Federal Rule of Bankruptcy Procedure 7052.

### I. PROCEDURAL HISTORY

A voluntary petition (the "Petition") under Chapter 13 of the United States Bankruptcy Code was filed by Peter F. Zooberg, Esquire ("Zooberg"), of the Law Office of Philip R. Boardman, P.C., purportedly on behalf of T.H. on August 20, 2013.[2] Docket No. 1. The Court issued a

---

**2.** Whether T.H. authorized the filing of the Petition filed on August 20, 2013, is a disputed factual issue in this matter.

Notice of Deficiency pursuant to Local Bankruptcy Rules 1007–1 and 3015–2 ("Notice of Deficiency") on August 23, 2013, due to the incomplete filing made on August 20, 2013; the notice warned of the possibility of dismissal if certain documents were not timely filed.[3] *Id.* No. 8. The Court also issued a Notice to Cure Credit Counseling Certification Deficiency on August 23, 2013, due to the failure to file a copy of the certificate of credit counseling with the Petition.[4] *Id.* No. 9. The Court entered an Order Dismissing Case on September 6, 2013, pursuant to the Notice of Deficiency issued on August 23, 2013, because the required schedules, statements, and Chapter 13 plan were not timely filed. *Id.* No. 12. The Chapter 13 case was closed on September 20, 2013. *Id.* No. 15.

Judy A. Robbins, United States Trustee for Region Four (the "U.S. Trustee"), by counsel, filed a Motion to Expunge Bankruptcy Filing (the "Motion to Expunge") on May 1, 2014. *Id.* No. 17. The U.S. Trustee alleged in the Motion to Expunge that the Petition was filed by Zooberg without T.H's signature or authorization in violation of Local Bankruptcy Rule 5005–2 and the Case Management/Electronic Case Files Policy Statement made effective on July 30, 2012 (the "CM/ECF Policy Statement").[5] Motion to Expunge at 6–7. The Motion to Expunge further alleged that the Petition contained several misrepresentations, including the representation made in Exhibit D, accompanying the Petition, that T.H. had completed the required pre-filing credit counseling course requirement when T.H. had not in fact fulfilled this requirement. *Id.* at 2–3.

The U.S. Trustee also filed a Motion to Impose Sanctions under 11 U.S.C. § 105 (the "Motion to Impose Sanctions") against Zooberg and his employer, the Law Office of Philip R. Boardman, P.C., (the "Boardman Firm") on May 1, 2014 (Docket No. 18), which it amended the same day (the "Amended Motion to Impose Sanctions"). Docket No. 19. In the Amended Motion to Impose Sanctions, the U.S. Trustee alleged that Zooberg violated Local Bankruptcy Rule 5005–2 and the CM/ECF Policy Statement by filing the Petition containing T.H.'s electronic signature without T.H.'s authorization or wet signature. *Id.* at 8. The U.S. Trustee prayed for the imposition of an appropriate sanction, including a monetary sanction of at least $1,000.00, against Zooberg and the Boardman Firm. *Id.* at 11. Zooberg and the Boardman Firm filed a Response to the Motion to Expunge and the Amended Motion to Impose Sanctions (the "Response") on May 23, 2014. Docket No. 25. In the Response, Zooberg and the Boardman Firm admitted the failure to produce a signed petition but denied that the Petition was filed without T.H.'s authorization. Response at 5. Zooberg and the Boardman Firm consented to the entry of an order

---

**3.** The filing failed to include the required schedules, statements, and Chapter 13 plan. These documents were due on September 3, 2013. The Notice of Deficiency provides that "[f]ailure to timely file the missing document(s) or to timely seek an extension of time, will result in the automatic dismissal of the bankruptcy case without further notice."

**4.** The certificate of credit counseling was due on September 3, 2013.

**5.** The CM/ECF Policy Statement made effective on July 30, 2012, governed Zooberg's conduct in meeting with T.H. and filing the Petition purportedly on her behalf on August 20, 2013. Hereinafter, unless otherwise stated, references to the CM/ECF Policy Statement refer to the version of the Statement made effective on July 30, 2012. The CM/ECF Policy Statement has since been revised. *See* CM/ECF Policy Statement, made effective December 1, 2013.

granting the Motion to Expunge. *Id.* at 6–7.

A hearing was held on the Motion to Expunge and the Amended Motion to Impose Sanctions on July 9, 2014. Docket No. 28. At the July 9, 2014 hearing, both Zooberg and Philip R. Boardman, Esquire ("Boardman"), of the Boardman Firm appeared without counsel. *Id.* Neither Zooberg nor the Boardman Firm presented any opposition to the Motion to Expunge, and both consented to the granting of the Motion to Expunge. Transcript of Hearing on July 9, 2014, on Motion to Expunge Bankruptcy Filing and Amended Motion to Impose Sanctions under 11 U.S.C. § 105 against Peter Zooberg and the Law Offices of Philip R. Boardman, P.C., (the "July 9, 2014 Transcript") at 4, 5, 12. Zooberg and the Boardman Firm admitted their failure to retain the signed documents in violation of the applicable rules and consented to the imposition of the $1,000.00 monetary sanction proposed by the U.S. Trustee.[6] *Id.* at 2, 5. Upon review of the pleadings filed by the U.S. Trustee and with the consent of all of the parties, the Court granted the Motion to Expunge to afford relief to T.H.[7] Docket No. 28; *see also* July 9, 2014 Transcript, at 12. The Order Granting the Motion to Expunge was entered on July 18, 2014. Docket No. 30. The hearing on the Amended Motion to Impose Sanctions was continued to afford Zooberg and the Boardman Firm the opportunity to retain counsel in defense of the Amended Motion to Impose Sanctions.[8] July 9, 2014 Transcript, at 9–10.

The continued hearing on the Amended Motion to Impose Sanctions was held on October 29, 2014. Docket No. 33.[9] In advance of the continued hearing, on October 27, 2014, counsel for Zooberg and the Boardman Firm filed a Report of Pre–Hearing Investigation.[10] *Id.* No. 32. At the continued hearing, Zooberg and the Boardman Firm appeared represented by counsel. *Id.* No. 33. The U.S. Trustee, represented by counsel, and T.H. also ap-

**6.** The Court did not accept the concession regarding the imposition of a $1,000.00 sanction against Zooberg and the Boardman Firm because of the unresolved factual dispute concerning whether the filing of the Petition was unauthorized. July 9, 2014 Transcript, at 7–8.

**7.** The Court granted the Motion to Expunge without making any factual findings as to the conduct of Zooberg and the Boardman Firm. *Id.* at 12.

**8.** At the hearing held on July 9, 2014, the Court inquired as to whether Zooberg and the Boardman Firm, who appeared unrepresented, had considered retaining counsel in defense of the Amended Motion to Impose Sanctions. The Court took a brief recess to permit Zooberg and Boardman an opportunity to discuss and consider whether it was in their respective interests to retain counsel. After the recess, Zooberg and Boardman stated to the Court their intention to retain counsel in defense of the Amended Motion to Impose Sanctions and requested a continuance of the hearing in order to procure counsel. *Id.* at 8–10. The Court continued the hearing on the Amended Motion to Impose Sanctions to October 29, 2014. Docket No. 33.

**9.** At the hearing conducted on October 29, 2014, the Court reserved ruling on whether the continued proceedings in the Amended Motion to Impose Sanctions would remain public or be sealed. Transcript of Hearing on October 29, 2014, on Amended Motion to Impose Sanctions under 11 U.S.C. § 105 against Peter Zooberg and the Law Offices of Philip R. Boardman, P.C., at 3. The Court finds that the records of the proceedings on the Amended Motion to Impose Sanctions should remain public.

**10.** The U.S. Trustee reserved the right to object to the Report of Pre–Hearing Investigation. *Id.* at 4, 13. Counsel for Zooberg and the Boardman Firm did not move for the entry of the Report into evidence, so the Court did not have an occasion to rule on its admissibility. The Report was not admitted into evidence.

peared at the continued hearing. *Id.* The U.S. Trustee moved for entry of a series of exhibits into evidence, which the Court admitted without objection from counsel for Zooberg and the Boardman Firm. Transcript of Hearing on October 29, 2014, on Amended Motion to Impose Sanctions under 11 U.S.C. § 105 against Peter Zooberg and the Law Offices of Philip R. Boardman, P.C., (hereinafter "Tr.") at 2. T.H. and Zooberg testified at the hearing, and following arguments by counsel, the Court took the matter under advisement. Docket No. 33.

## II. FINDINGS OF FACT

The Court, having considered the evidence, makes the following findings of fact.

### A. Authorization to File Petition on T.H.'s Behalf

■ It is not disputed that neither Zooberg nor the Boardman Firm have been able to produce the wet signature [11] of T.H. on any document filed in this case.[12] Tr. at 7–8. Counsel for Zooberg and the Boardman Firm conceded at the hearing that neither Zooberg nor the Boardman Firm retained or has been able to produce the original or a copy of the original Petition containing T.H.'s wet signature. *Id.*; *see also* July 9, 2014 Transcript, at 2–4. The Court agrees with the concession of counsel for Zooberg and the Boardman Firm that the failure to produce the wet signature on a petition leads to the conclusive presumption that the signature does not exist.[13] Tr. at 8. Disputed in this matter is whether, despite failing to produce T.H.'s wet signature on any document in the bankruptcy case, Zooberg nonetheless obtained T.H.'s authorization to file a bankruptcy petition on her behalf. The voluntary Chapter 13 petition (the "Petition") was filed by Zooberg purportedly on T.H.'s behalf on August 20, 2013.

11. As Judge Phillips explained:

In electronically filed cases, the "/s/" followed by a full typewritten name on a document constitutes that person's signature. See Policy Statement, Policy 8; *In re Wenk*, 296 B.R. 719, 724 (Bankr.E.D.Va.2002). When an attorney files a document purportedly containing the debtor's signature, he is representing to the court that he has secured the original executed document prior to it being being electronically filed. *Id.* at 725. The electronic submission of a document by an attorney who falsely represents that the document has been signed by the debtor "is no different than [the attorney] physically forging the debtor's signature and handing [it] over the counter to the clerk." *Id.* The Policy Statement includes a means by which the authenticity of a document may be verified by requiring that documents which require original signatures and that are electronically filed must be maintained by the User until 3 years after the closing of the case, and upon request of the Court, the User shall provide such originally executed document or imaged record for review. Policy Statement, Policy 7(A).

*In re Smith*, Case No. 13–31565–KLP, 2014 WL 128385, at *4 (Bankr.E.D.Va. Jan. 14, 2014) (slip copy).

12. The Court notes that Zooberg has at times offered different theories for his failure to produce a signed copy of the Petition. Zooberg has offered: "I'm afraid that the signed paperwork may have been misfiled." July 9, 2014 Transcript, at 3–4. Zooberg also stated: "The only possible explanation that I can provide for this is that the original signed petition was accidentally sent home with Mrs. Hill, along with a copy." UST Ex. 7, Letter from Peter Zooberg, Esq., to Office of U.S. Trustee, dated March 31, 2014, at 3. To the proffered explanation that T.H. took the documents with her when she left on August 20, 2013, Zooberg later testified that the "basis for saying that is that I was [*sic*] couldn't find it.... I did not see her doing something like that.... I do not have any evidence that that happened." Tr. at 69.

13. Counsel for Zooberg and the Boardman Firm stated, and the Court agrees, that if an attorney "can't produce that wet signature ... it doesn't exist." *Id.* at 8.

UST Ex. 2, Petition, Exhibit D, and list of creditors filed August 20, 2013. T.H.'s electronic signature was affixed to the Petition and to Exhibit D, the Individual Debtor's Statement of Compliance with Credit Counseling Requirement, filed with the Petition. *Id.*

The events leading to the filing of the Petition began on the morning of August 20, 2013. T.H. came to the Boardman Firm's office during the late morning that day on instruction from Janice Parker,[14] a representative at Home Meditation Services.[15] Earlier that morning, T.H. received a text message from Parker regarding paperwork that T.H. needed to complete on behalf of her estranged husband for a short sale of his house (the "Greenfield Crescent property"). Tr. at 17, 25. Although T.H. was separated from her estranged husband at the time, she was helping him arrange a short sale while he was deployed with the United States Navy; T.H. had a power of attorney authorizing her to execute any necessary documents on his behalf. *Id.* at 18–20; *see also* UST Ex. 3, Motion to Impose Sanctions under 11 U.S.C. § 105 and Supporting Memorandum, at 3–4. When T.H. telephoned Parker in response to her text message, Parker instructed T.H. to come to the Home Meditation Services' office located in Virginia Beach, Virginia, to complete paperwork for the Greenfield Crescent property. Tr. at 25–26. When T.H. explained that she was unable to go to the office on that day, Parker instructed T.H. to go instead to an attorney's office— the Boardman Firm—in Hampton, Virginia, which T.H. agreed to do. *Id.* at 17, 25–27. T.H. believed that she was going to the attorney's office to sign the paperwork related to the Greenfield Crescent property. *Id.* at 17. T.H. had no prior contact with or knowledge of Zooberg or the Boardman Firm prior to her conversation with Parker on August 20, 2013. *Id.* at 27.

According to Zooberg, in the late morning of August 20, 2013, he received a few brief telephone calls from an individual who identified himself as Joshua Blum.[16] *Id.* at 47, 49–50. Prior to these conversations, Zooberg had never had any contact with or knowledge of Blum. *Id.* at 47. Blum requested that Zooberg file a bankruptcy petition on behalf of a married couple with whom Blum was working on a loan modification and short sale transaction. *Id.* From these conversations with Blum, Zooberg believed that the bankruptcy needed to be filed on a time-sensitive basis to stop an imminent foreclosure of the couple's home that was scheduled for later that day.[17] *Id.* at 50. Blum told Zooberg that the husband was not in town

---

**14.** Janice Parker has not appeared in this matter and did not appear at the hearing held on October 29, 2014.

**15.** According to T.H., Home Mediation Services, is a company that assists distressed homeowners in procuring short sales of their homes. *Id.* at 19.

**16.** The Court acknowledges that this individual is presently or has previously been known as Joshua Macias. *Id.* at 79. The Court refers to this individual as Joshua Blum. Blum has not appeared in this matter and did not appear at the hearing conducted on October 29, 2014. T.H. testified that she did not know of or correspond with anyone named Blum or Macias at Home Mediation Services and that her communications with Home Mediation Services were primarily with Parker. *Id.* at 21. T.H. did receive a text message from Parker and another number that she did not recognize on the morning of August 20, 2013. *Id.* at 22, 25. T.H. testified that she later learned that the phone number she did not recognize belonged to an individual named Blum. *Id.* at 22, 39.

**17.** T.H. did not know that a foreclosure was scheduled for August 20, 2013, on the Greenfield Crescent property. *Id.* at 17.

and would not be able to go to Zooberg's office, but that the wife had the husband's power of attorney. *Id.* at 48–49. Zooberg informed Blum that he could not file a bankruptcy on behalf of the husband without the husband appearing in his office but that he would file a bankruptcy petition on behalf of the wife if she were present in his office. *Id.*

Zooberg obtained scant information from Blum about the wife and her financial circumstances. Zooberg learned from Blum that the property was encumbered by a mortgage and that the mortgage was in default. *Id.* at 54. Zooberg, however, did not ask Blum about or otherwise learn the amount of arrearages on the mortgage or whether both spouses were liable on the mortgage. *Id.* at 54–55. Zooberg made no additional efforts to confirm his belief of the identity of the borrower or borrowers on the mortgage note. *Id.* Zooberg discussed with Blum the filing of a Chapter 13 petition in order to save the property from foreclosure, but he did not discuss the consequences of filing a petition under Chapter 13 or under any other chapter of the Bankruptcy Code. *Id.* at 47–48, 54. Zooberg erroneously assumed from his conversation with Blum that someone had advised the wife that a foreclosure was imminent and that filing a bankruptcy was necessary to stop the scheduled foreclosure. *See* UST Ex. 7, Letter from Peter

Zooberg, Esq., to Office of U.S. Trustee, dated March 31, 2014 (hereinafter, "UST Ex. 7, Letter from Zooberg"), at 3.[18] Despite having no prior knowledge of or relationship with Blum and possessing minimal information about the situation, Zooberg agreed to meet with the wife to file a bankruptcy on her behalf. *Id.* at 1; Tr. at 47, 54–55.

At the conclusion of his conversations with Blum, Zooberg gave Blum the e-mail address and PayPal account information for Boardman to effectuate the transfer of $850.00 for the filing of a bankruptcy petition. Tr. at 49. According to Zooberg, $850.00 was the typical fee that the Boardman Firm charged for the filing of a Chapter 13 case. *Id.* Zooberg understood that the transfer was to occur immediately after the phone conversation with Blum. *Id.* at 52. The transfer occurred at approximately 11:47 AM EST.[19] UST Ex. 6, E-mail Containing PayPal Receipt, dated August 20, 2013; *see also* Tr. at 51–52. Notwithstanding the $850.00 that was purportedly paid on her behalf, T.H. did not authorize or make any payment to Parker, Blum, Home Meditation Services, Zooberg, the Boardman Firm, or any other person or entity in connection with the proposed short sale of the Greenfield Crescent property or the filing of a bankruptcy petition.[20] Tr. at 13, 22–23.

---

**18.** "To our understanding, she had already been paying Mr. Blum for his services in attempting to stop the sale, so it is clear that she wanted to avert the sale.... All this, after her home retention expert had advised her that his efforts to stop the sale had not been successful, and that she needed to see a bankruptcy attorney." UST Ex. 7, Letter from Zooberg, at 3.

**19.** The timestamp contained in the e-mail from Joshua Blum's PayPal account to Boardman that contains the PayPal receipt is in Greenwich Mean Time. UST Ex. 6, E-mail Containing PayPal Receipt, dated August 20,

2013; *see also* Tr. at 51–52. Zooberg testified that this time frame comported with his recollection. Tr. at 51–52.

**20.** T.H. testified that her estranged husband made one $1,000.00 payment to Home Meditation Services when he engaged the company to effectuate the short sale transaction. *Id.* at 23. T.H. did not personally make any such payments and the $1,000.00 payment was not made on her behalf. *Id.* T.H.'s estranged husband did not appear as a witness in this matter or at the hearing on October 29, 2014.

T.H.'s and Zooberg's accounts of the conversations and events that occurred during their meeting on August 20, 2013, are at odds. It is not disputed, however, that the meeting was short and, according to Zooberg, was indeed "far briefer than it should have been." *Id.* at 27–28, 66, 84. Zooberg and T.H. do agree that certain inquiries were made during the meeting. When T.H. entered Zooberg's office, Zooberg asked T.H. her name and whether she "was there for the Suffolk property." [21] *Id.* at 17, 27, 56. Zooberg admitted, however, that his question regarding the "Suffolk property" was an ambiguous one. *Id.* at 56. While Zooberg believed he was asking T.H. her current address, Zooberg acknowledged that T.H. had a different understanding: T.H. "of course thought I was talking about the subject property that was up for foreclosure." *Id.* Then, Zooberg asked T.H. for her Social Security Number, which she provided. *Id.* at 18, 66–67. When T.H. inquired why her Social Security Number was needed, Zooberg stated that it was required to file a bankruptcy. *Id.* at 18, 27–28.

At this point, the accounts of T.H. and Zooberg depart. According to T.H., she declined to file bankruptcy and shortly thereafter left Zooberg's office. *Id.* at 18, 28, 41. This was the first time T.H. had heard of a bankruptcy being filed on her behalf. *Id.* at 25–26. T.H. was in good financial condition on that morning and did not wish to file bankruptcy. *Id.* at 26. According to T.H., Zooberg did not ask her any additional questions beyond her name, whether she was there for the Greenfield Crescent property, and her Social Security Number. *Id.* at 29–30, 36. T.H. adamantly and, the Court specifically finds, credibly denied that she signed any documents at any time during her meeting with Zooberg and that she took any documents or papers with her when she left the Boardman Firm office. *Id.* at 30, 35–36.

Zooberg's account of the rest of the meeting differs. According to Zooberg, he asked T.H. whether she was filing the bankruptcy to save the Greenfield Crescent property, and T.H. nodded in agreement. *Id.* at 59. Zooberg recalled asking T.H. whether she had taken the required credit counseling course. *Id.* at 59, 67.[22] Zooberg conducted a PACER [23] search to determine whether T.H. had any prior bankruptcy filings and discovered that she had not filed bankruptcy before. *Id.* at 60. Zooberg testified he obtained T.H.'s signature on the Petition and "seem[s] to recall she signed [the Petition and Exhibit D] very quickly and then asked if there was anything else she needed to sign and left [Zooberg's] office." [24] *Id.* at 66, 67.

---

**21.** The Court notes that Zooberg's testimony at the October 29, 2014 hearing conflicts with the representations made in his March 31, 2014 letter to the U.S. Trustee. *See* UST Ex. 7, Letter from Zooberg. In the letter, Zooberg represented that he "explained [to T.H.] what we were doing to avert the foreclosure sale...." *Id.* at 1.

**22.** Zooberg later testified that he "strongly believe[s]" that he asked T.H. whether she had received credit counseling based in part on his general practice of asking potential debtors whether they have completed the credit counseling course prior to filing. Tr. at 63. He later testified that he asked her "to a ninety-eight percent ... probability" and that

he was certain he made this inquiry to T.H. *Id.*

**23.** "Public Access to Court Electronic Records (PACER) is an electronic public access service that allows users to obtain case and docket information online from federal appellate, district, and bankruptcy courts, and the PACER Case Locator." Administrative Office of the U.S. Courts, PACER Service Center, http://www.pacer.gov (last visited Mar. 18, 2015).

**24.** In his letter to the U.S. Trustee, Zooberg insisted that the only explanation for the missing Petition was that T.H. took the signed

The Court considers significant the fact that Zooberg stated on numerous occasions during examination and in pleadings that his recollection of the brief meeting with T.H. and the day's events in general is "hazy." *See, e.g.,* Tr. at 59, 63, 66; UST Ex. 4, Response to U.S. Trustee's Motion to Expunge Bankruptcy Filing, and Motion to Impose Sanctions under 11 U.S.C. § 105, at 3, 6; UST Ex. 7, Letter from Zooberg, at 1–2. Notwithstanding his admittedly hazy recollection, Zooberg testified he has a specific and clear memory of T.H. signing the Petition. Tr. at 66, 77. As counsel for Zooberg acknowledged, "It's easy to remember when you have the physical, wet signature in your file and you can produce it. It enhances it, and it corroborates our memory." *Id.* at 111. Unfortunately in this case, no wet signature has been produced that can support Zooberg's allegedly certain memory of obtaining T.H.'s signature. No original signed Petition has been produced in this case. There is no engagement letter memorializing T.H.'s intent to have the Boardman Firm file a bankruptcy on her behalf. *Id.* at 64. There is no intake form documenting T.H.'s visit to the Boardman Firm and her purpose for meeting with Zooberg. The only evidence offered for a signed and authorized Petition in this case is Zooberg's purportedly clear recollection of T.H. signing the Petition in an otherwise hazy blur of a day. The Court's finding as to whether the Petition was signed and authorized by T.H. therefore relies solely on a determination and weighing of the credibility of T.H. and Zooberg.

It is not disputed that Zooberg and the Boardman Firm have failed to produce the signed Petition with T.H.'s wet signature in violation of CM/ECF Policy Statement 7(A). UST Ex. 4, Response to U.S. Trustee's Motion to Expunge Bankruptcy Filing, and Motion to Impose Sanctions under 11 U.S.C. § 105, at 5; *see also* Tr. at 8; July 9, 2014 Transcript, at 3. Counsel for Zooberg and the Boardman Firm concedes that the failure to produce the original signature means that the signature does not exist. Tr. at 7–8. Taken in conjunction with T.H.'s testimony, which the Court finds more credible than that of Zooberg, the Court concludes as a finding of fact that Zooberg failed to obtain T.H.'s wet signature on the Petition.

■ As to whether T.H. authorized the filing of the Petition, there is a factual dispute and clearly conflicting accounts. Counsel for Zooberg and the Boardman Firm commented favorably on more than one occasion during the continued hearing on T.H.'s credibility, describing her as "an extremely credible person" and "an honest person with a high degree of personal integrity." *Id.* at 6, 37. On this point, the Court strongly agrees. The Court finds that T.H. is a highly credible witness. In contrast, the Court finds the credibility of Zooberg's testimony to be lacking. The Court finds that Zooberg's coincidentally lucid recollection of certain events compared to the otherwise hazily-remembered day more closely reflects what he wishes had occurred than it does the reality of the day's events. The Court finds that T.H. did not authorize the filing of the Petition and that Zooberg did not have permission to affix T.H.'s electronic signature to the Petition.

B. Misrepresentations Made in the Chapter 13 Petition

The differing accounts of T.H. and Zooberg of their meeting on August 20, 2013,

---

Petition with her when she left. UST Ex. 7, Letter from Zooberg, at 2. Zooberg testified, however, that he had no factual basis for such statement as he did not see T.H. take the Petition with her when she left. Tr. at 69.

also bear upon additional misrepresentations made within the papers filed with the Court. Zooberg claims to specifically remember asking T.H. whether she had taken a credit counseling course as required by the Bankruptcy Code. *Id.* at 67; *see also* UST Ex. 4, Response to U.S. Trustee's Motion to Expunge Bankruptcy Filing, and Motion to Impose Sanctions under 11 U.S.C. § 105, at 2. Zooberg recalls specifically asking T.H. if she wished to "save" the Greenfield Crescent property. Tr. at 58, 59, 85. Aside from these scant inquiries, Zooberg conceded that he failed to make several critical inquiries during the brief meeting. Zooberg neglected to make any serious inquiry into T.H.'s financial and personal circumstances. *Id.* at 72–73, 84–85. Indeed, Zooberg acknowledged that, at the time he filed the Petition, he did not have "the solid understanding of [T.H.'s] financial condition that [he] should have had."[25] *Id.* at 84–85; *see also id.* at 95, 103. Zooberg further admitted that he did not inquire as to T.H.'s income, assets, debts, liabilities, or current residence.[26] *Id.* at 58–60. Zooberg admitted that he did not know whether T.H. was liable on the mortgage note on the Greenfield Crescent property "because [he] did not spend enough time communicating with [T.H.] when she was right in front of [him] in [his] office." *Id.* at 55. Instead, Zooberg erroneously assumed from his brief conversations with Blum that she was liable on the note. *Id.* Zooberg confessed that "had [he] known that she was not liable on the note, there's no way that [he] would have filed this bankruptcy." *Id.* The first time Zooberg learned that T.H. was not liable on the note was during T.H.'s second visit to the Boardman Firm's office in March 20, 2014.[27] UST Ex. 7, Letter from Zooberg, at 2, 3. Zooberg further admitted that did not ask T.H her current address. Tr. at 56. Despite Zooberg's failure to ask several critical questions and his overall limited understanding of T.H.'s circumstances, Zooberg made a series of representations on the Petition for which he had an insufficient or no factual basis.

25. Zooberg admitted: "[T]his is my fault because I didn't do the due diligence that I should have in—in terms of speaking to her and getting a solid grasp of her financial situation beforehand." Tr. at 103.

26. Q: ... And did you determine that she had between one and forty-nine creditors? ... Did you determine that?
A: No, I don't think that I did....
Q: You didn't ask her how many creditors she had, did you?
A: No, I did not.
...
Q: You didn't ask her what her source of income [was], did you?
A: No, I did not.
...
Q: And did you ask her what the estimated value of her assets were [*sic*]?
A: No, I did not.
...
Q: You didn't determine that [T.H.] had between zero and 50,000 in liabilities on that morning, did you?
A: No, I did not.
...
Q: Did you ask her whether she had been domiciled in the district for more than 180 days?
A: No, I did not.
*Id.* at 58–61. According to T.H., the extent of the conversation was Zooberg "asking me my name, and the Greenfield [Crescent] property, and my Social Security Number." *Id.* at 29.

27. Zooberg stated that he found this information "surprising, as she had been paying a home retention company to assist her in securing a loan modification, and also appeared in our office *on the very day of the [foreclosure]* sale." UST Ex. 7, Letter from Zooberg, at 2. Zooberg did not provide any factual support for this erroneous assumption. *See* Tr. at 23 (testimony by T.H. indicating that she did not personally make any payments to Home Mediation Services in relation to the Greenfield Crescent property).

#### i. T.H.'s Address

On the date of the filing of the Petition, T.H. resided in an apartment located in Hampton, Virginia (the "Hampton apartment"); T.H. had been living at the Hampton apartment since April 2012. *Id.* at 14–15, 30; UST Ex. 5, Residential Lease Agreement dated April 2, 2012. On the Petition, T.H.'s current address is listed as the Greenfield Crescent property address. UST Ex. 2, Petition, Exhibit D, and list of creditors filed August 20, 2013. Both Zooberg and T.H. testified that Zooberg did not ask for her current address during their meeting. Tr. at 30, 56. The Greenfield Crescent property address was T.H.'s former address and her marital home prior to her separation from her estranged husband. *Id.* at 16. T.H. had not resided at the Greenfield Crescent property since separating from her estranged husband and obtaining a separate residence. *Id.* at 15. Zooberg admitted that he made an erroneous assumption based on his conversations with Blum that the Greenfield Crescent property was T.H.'s current residence and that listing it on the Petition as T.H.'s current address was inaccurate.[28] *Id.* at 55–56.

The Court finds that Zooberg did not sufficiently inquire as to T.H.'s current address. Moreover, Zooberg did not have adequate independent information as to T.H.'s current address. Nonetheless, Zooberg represented on the Petition that the Greenfield Crescent property was T.H.'s current address despite the fact that T.H. resided at the Hampton apartment on the Petition date. Therefore, the Court finds that Zooberg failed to make appropriate inquiry of T.H.'s address and made an affirmative misrepresentation on the Petition as to T.H.'s current address.

#### ii. T.H.'s Completion of Pre–Petition Credit Counseling

T.H. and Zooberg's accounts also conflict as to whether Zooberg asked T.H. if she had completed the requisite credit counseling course.[29] *Id.* at 59, 63. T.H. denied that Zooberg asked her whether she had taken a credit counseling course. *Id.* at 29, 30. T.H. further denied having any knowledge of such a course. *Id.* at 29. Despite Zooberg's repeated characterization of his recollection of the meeting as "hazy," he nonetheless testified that, because it is the Boardman Firm's policy to inquire as to a potential debtor's completion of credit counseling, he is "certain" that he acted in conformity with that policy on August 20, 2013. *Id.* at 63. Zooberg admitted that he filed the Petition without first obtaining from T.H. a copy of the credit counseling course completion certificate, based on what he believed was an emergency situation. *Id.* at 62–63, 67. Zooberg indicated that filing the Petition without the certificate in hand comported with a then-existing Boardman Firm practice of filing petitions without this required documentation in certain limited circumstances based on oral representations from debtors that the credit counseling requirement had been completed.[30] *Id.* at 62.

---

28. Zooberg admitted that he erroneously assumed that she resided at the Greenfield Crescent property and was unaware "that she had her own separate residence at [*sic*] Hampton." Tr. at 88.

29. The Court notes that at times Zooberg testified that he was certain and later that he "strongly believed" that he inquired as to whether T.H. had completed the credit counseling requirement. Zooberg later testified that he was certain "to a 98%" probability. Tr. at 63. The Court is troubled by Zooberg's varying testimonies.

30. Zooberg stated that the Boardman Firm has since discontinued this practice and now does not file a petition in any circumstance without first receiving the certificate of completion of credit counseling from the debtor. *Id.* at 62–63.

Zooberg's recollection appears to be founded on what he believes happens in every case and what he wishes had happened in this case. The Court finds more credible T.H.'s testimony that Zooberg did not inquire as to whether she had completed the pre-petition credit counseling course that is required to be eligible to be a debtor under the Bankruptcy Code. The Court is very disturbed that the Petition represented that credit counseling had been completed without an inquiry being made regarding whether T.H. had taken the required credit counseling course. Even if the Court were to find that Zooberg inquired as to the completion of the credit counseling course, it is not disputed that T.H. did not complete the required credit counseling course. The Court therefore finds that Zooberg made a misrepresentation in Exhibit D, the Individual Debtor's Statement of Compliance with the Credit Counseling Requirement, filed with the Petition, by stating that T.H. had completed the credit counseling requirement.

### iii. T.H.'s Financial Affairs

According to T.H., her finances were in good condition on the morning of August 20, 2013. T.H. was living within her means and was not due and owing on any of her bills. *Id.* at 26. Zooberg admitted that he did not inquire as to T.H.'s financial circumstances during the meeting. *Id.* at 58. Zooberg admitted that he did not ask T.H. about her creditors, her income, her assets, or her liabilities. *Id.* at 58, 60. Despite Zooberg's admission that he did not inquire as to the number of creditors T.H. had, the Petition lists that T.H. had between one and forty-nine creditors. UST Ex. 2, Petition, Exhibit D, and list of

creditors filed August 20, 2013. The list of creditors accompanying the Petition indicates that T.H. had three creditors: PNC Bank, PNC Mortgage Company, and Verizon.[31] *Id.* Zooberg admitted that he did not ask T.H. whether Verizon was one of her creditors. Tr. at 78–79. Zooberg admitted that the software program he used to prepare the Petition automatically generated Verizon as a creditor and that he did not sufficiently review the document to remove the creditor's name.[32] *Id.* at 78. Despite Zooberg's admission that he did not inquire as to T.H.'s liabilities or assets, the Petition lists that T.H. has liabilities between $0 and $50,000.00 and assets between $0 and $50,000.00. UST Ex. 2, Petition, Exhibit D, and list of creditors filed August 20, 2013. Zooberg admitted that he did not ask T.H. about her income; he filed the Petition without knowing that T.H. is a student and is not employed outside of the home. Tr. at 14, 29, 58.

The Court finds that, due to Zooberg's failure to conduct an appropriate inquiry of T.H.'s financial circumstances, Zooberg had no knowledge of T.H.'s assets, liabilities, income, or creditors. Despite having no knowledge of T.H.'s financial circumstances, including her assets, liabilities, income, or creditors, Zooberg made a series of representations on the Petition regarding T.H.'s circumstances. Therefore, the Court finds that Zooberg made misrepresentations with respect to T.H.'s assets, liabilities, and creditors on the Chapter 13 Petition.

### iv. Proper Venue

Finally, the Court finds that Zooberg made a misrepresentation in the Petition

---

**31.** T.H. testified that PNC is the noteholder on the note securing repayment on the Greenfield Crescent property. *Id.* at 37. Although T.H. was a co-mortgagor on the deed of trust, T.H. was not at any time personally liable on the related note. *Id.* at 16.

**32.** T.H. had an account with Verizon for her home telephone and cell phone, but her account was not due and owing on August 20, 2013. *Id.* at 28–29.

regarding venue. The Petition indicates that venue is proper in the Eastern District of Virginia because T.H. had resided in the district for the 180 days prior to the filing of the Petition on August 20, 2013. UST Ex. 2, Petition, Exhibit D, and list of creditors filed August 20, 2013; Tr. at 60–61. Zooberg admitted that he erroneously assumed from his telephone conversation with Blum that, because the short sale process had been a lengthy one, T.H. must have resided in the district for at least 180 days prior to the filing of the Petition. Tr. at 61. Zooberg admitted that he did not ask Blum or T.H. where T.H. had been living and whether she had been living in the Eastern District of Virginia the 180 days prior to the filing of the Petition. *Id.*

The Court finds that Zooberg made a series of troubling misrepresentations on the Petition. He misrepresented T.H.'s address as the Greenfield Crescent property, when she in fact resided at the Hampton apartment. He misrepresented on Exhibit D filed with the Petition that T.H. had completed the required credit counseling course prior to filing ·when she had not. He misrepresented T.H.'s financial circumstances, including her assets, liabilities, and creditors. He represented that venue was proper in the Eastern District of Virginia in T.H.'s case without sufficient inquiry to verify the appropriateness of the venue.

### C. Due Diligence

 It is never sufficient due diligence for any counsel to file a bankruptcy petition founded solely upon asking a debtor for her Social Security Number and whether she has taken a credit counseling course. Counsel for Zooberg and the Boardman Firm acknowledged that such conduct is negligent.[33] *Id.* at 117. The proper filing of a bankruptcy petition necessitates a much more extensive investigation into a debtor's circumstances ·than was conducted by Zooberg on August 20, 2013. The Court does not consider even the most exigent of circumstances as a justification for an attorney to disregard or ignore the duties of care and due diligence and the obligation to make a reasonable inquiry into a debtor's personal and financial circumstances. Despite the disputed accounts of the meeting on August 20, 2013, Zooberg admitted that his meeting with T.H. was brief and that the source of his ignorance regarding her financial circumstances stemmed from a meeting that was "far briefer than it should have been." *Id.* at 66, 84–85. He acknowledged that his limited understanding of T.H.'s case was based on "small bits of information that [he] had gleaned from Mr. Blum" rather than from asking T.H. appropriate questions about her circumstances. *Id.* at 73. He admitted that the misrepresentations arose because he was "working too fast, not properly understanding the debtor's financial situation prior to filing." *Id.* at 65. Indeed, counsel for Zooberg conceded that Zooberg "allowed somebody else's crisis to become his crisis and [he] mismanaged that crisis." *Id.* at 9. Zooberg testified that he regretted his lack of proper investigation of T.H.'s case and the filing of the Petition: "[I]f I could simply go back in time, I would have certainly undergone a more thorough analysis of her financial situation that would have resulted in me making a better decision about what

---

**33.** "Is it negligent to not meet appropriately and with a sufficient period of time for a client to ascertain their financial information correctly before filing? Absolutely. Is it negligent to not have something in process that guarantees that a signature can be retrieved? Albeit one out of a hundred, it's still a violation of a rule not to have it in that case. And to not have the credit counseling certificate in hand, is that negligent? I think it is." Tr. at 117.

should have happened on that day."[34] *Id.* at 55. Zooberg "was responding to what [he] perceived to be ... an incredible emergency. As it turns out ... from [his] understanding later that [T.H.] was not even on the note [for the Greenfield Crescent property], it—it really wasn't so much an emergency." *Id.* at 65. Zooberg aptly summarized the situation: *"I didn't do the due diligence that I should have* in—in terms of speaking to her and getting a solid grasp of her financial situation beforehand." *Id.* at 103 (emphasis added).

Even assuming this Court was to find that the Petition in this case was authorized by T.H., which it resolutely does not, this Petition represents the worst example of bad faith filing by a counsel that has presented itself in many years. The list of information Zooberg failed to obtain from T.H. is lengthy. Zooberg admitted that he did not conduct a sufficiently thorough investigation of T.H.'s financial situation prior to filing the Petition. *Id.* at 65, 84–85. Zooberg admitted that he did not inquire as to T.H.'s marital or family status. *Id.* at 72–73. Had Zooberg done so, he would have learned that T.H. was separated from her estranged husband and has two young children. *Id.* at 14. Zooberg admitted that he did not inquire as to T.H.'s employment status or her source of income. *Id.* at 58. Had he done so, Zooberg would have learned that T.H. does not earn an income, is not employed outside of the home, and has been a student at Thomas Nelson Community College since 2012. *Id.* Zooberg offered no testimony that he reviewed the Petition with T.H. prior to allegedly soliciting her authorization and wet signature. Had Zooberg acted in accordance with the expectations of this Court and his obligation to certify the validity of the representations contained in the Petition by reviewing the Petition with T.H. prior to filing, he would have had an opportunity to realize the myriad of information he failed to solicit from T.H.

Indeed, the Court finds that Zooberg conducted essentially no investigation of T.H.'s personal and financial circumstances. Instead, the Court finds Zooberg relied on insinuations made by a third party with whom he was unacquainted. *Id.* at 47–50. The Court further finds that Zooberg had no personal knowledge of the third party's relationship with T.H. or her estranged husband or the source of the third party's knowledge of their circumstances beyond the representations made to Zooberg during a brief phone call. *Id.* The Court finds that as a result of Zooberg's failure to conduct a sufficient inquiry and investigation of T.H.'s personal and financial situation, Zooberg made a series of misrepresentations to the Court by and within the filing of the Petition. The Court finds that Zooberg neither exercised adequate due diligence nor fulfilled his basic duty of care in filing the Petition purportedly on T.H.'s behalf. Zooberg's failure to fulfill his basic obligations to this Court to undertake a proper assessment and inquiry into this case prior to filing a bankruptcy petition greatly troubles the Court.

D. Contact Following August 20, 2013

Zooberg's contact with T.H. following her visit to the Boardman Firm's office on August 20, 2013, was nonexistent. Zooberg did not schedule a follow-up appointment for T.H. nor did he contact her following the August 20, 2013 meeting. *Id.* at 67–69. Zooberg explained that, ordinarily, the firm's receptionist schedules a follow-up appointment with a client before the client leaves the office. *Id.* at 67.

---

**34.** Zooberg later admitted: "There's [sic] .a million different aspects of this case that I regret, that I wish I could take back.... " *Id.* at 94.

According to Zooberg, his paralegal attempted to contact T.H. by telephone.[35] *Id.* at 68. Further, Zooberg admitted that the telephone number on file for T.H. was that of her estranged husband and that one of the digits was incorrect. *Id.* According to Zooberg, his only communication with any other party regarding the Petition or the bankruptcy filing was contacting a lawyer for PNC Mortgage Company, the lienholder that was planning to foreclose on the property, to inform the mortgage company of the bankruptcy filing. *Id.* at 51.

Zooberg did not have any contact with T.H. after the August 20, 2013 meeting until March 20, 2014. *Id.* at 68. Zooberg failed to contact T.H. despite the myriad of activity in T.H.'s case, including the dismissal of her case on September 6, 2013.[36] Indeed, had T.H. not unwittingly discovered the bankruptcy filing and personally initiated contact with Zooberg, Zooberg likely would not have had any further contact with T.H. Prior to March 20, 2014, T.H. applied for a store credit card at a T.J. Maxx store. *Id.* at 31. She later received a letter informing her that her credit card application had been declined because a bankruptcy filing appeared on her credit history report. *Id.* The receipt of this letter was the first time that T.H. learned that a bankruptcy case had been filed in her name. *Id.* T.H. visited the Bankruptcy Court's Clerk's Office in Norfolk to inquire about the filing and confirmed that a bankruptcy had been filed in her name. T.H. testified that on March 20, 2014, she contacted the Boardman Firm and appeared at the firm's office to inquire about the bankruptcy filing and to seek assistance in removing the bankruptcy filing from her credit history. *Id.* at 32–33. T.H. was highly dissatisfied with the interaction with the Boardman Firm and Zooberg that day because Zooberg and Boardman were not willing to assist her in removing the bankruptcy filing from her credit record or to help her understand her options. *Id.* at 33–34, 36, 42. T.H. testified that Boardman was dismissive of her position that she did not authorize the filing of the bankruptcy and insisted that it was not possible that the Petition was filed without her authorization. *Id.* at 32–33.

Zooberg's letter to the U.S. Trustee dated March 31, 2014, corroborates T.H.'s testimony that Zooberg's and Boardman's response to her on March 20, 2014, was an unreceptive and unhelpful one. UST Ex. 7, Letter from Zooberg. Zooberg stated, "[T]here is simply no way that I would have or did file a bankruptcy petition for a client who had instructed me not to do so." *Id.* at 1. In the letter, Zooberg went on to write that he is "absolutely convinced that [he] acted in accordance on this instance with [T.H.]" with his general practice of obtaining a debtor's authorization and signature prior to filing a bankruptcy petition. *Id.* Regarding the August 20, 2013 meeting, Zooberg notes that his "recollection of [the] meeting is admittedly hazy, as it was a very brief meeting. . . ." *Id.* Zooberg maintained, however, that "[i]t is

---

**35.** Zooberg stated there was a "note" documenting a paralegal's attempt to call T.H. following the August 20, 2013 meeting to "finish up the rest of [the] case." *Id.* at 68. No such note was introduced or admitted into evidence.

**36.** For example, the Notice to Cure Credit Counseling Certification Deficiency, the Notice of Requirement to Complete Course in Personal Financial Management and to File Certification, and the Notice of Local Bankruptcy Rules 1007–1 and 3015–2 Deficiency, all issued on August 23, 2013, generated electronic notifications to Zooberg. Docket Nos. 7–9. The Notice of Dismissal issued on September 8, 2013, also generated a notification to Zooberg. Docket No. 13.

incredibly unlikely that [T.H.], on the very day of her foreclosure sale, walked into a bankruptcy attorney's office for some other purpose, other than for filing a bankruptcy to stop the sale." *Id.* at 2. Despite twice in the letter characterizing his recollection of the August 20, 2013 meeting as "admittedly hazy," Zooberg stated that he is "absolutely convinced" that he obtained T.H.'s authorization and signature. *Id.* at 1–2. Zooberg "arrive[d] at this conclusion, in part based on [his] admittedly hazy recollection of the day's events, but also based in part on simple objective reasoning." *Id.* at 2. According to Zooberg, T.H. displayed "remarkably rude and belligerent behavior" during her March 20, 2014 visit to the firm's office, and she was "remarkably discourteous" and was "disparaging the firm" to others in the waiting room. *Id.* T.H. agrees that she was upset during her March 20, 2014 visit because the response that she received from the Boardman Firm was dismissive and unhelpful: "They were just trying to say no, it couldn't have happened and no one was really just saying let me look through something. Let me check up [*sic*]. Let me–give us a second, let's look. It was just no, you're wrong. You're wrong." Tr. at 33–34; *see also id.* at 42 (T.H. recalling that "I initially went in there just for help and answers and ... I just felt like [Zooberg and Boardman] just blew it off like oh, well, what are you going to do about it, basically, and it just frustrated me because it's like the little person just going for help.").

It is not disputed that Zooberg and the Boardman Firm have been unable to produce the original or a copy of the original signed Petition filed in this case. *Id.* at 7–8, 85, 94; *see also* July 9, 2014 Transcript, at 3; UST Ex. 4, Response to U.S. Trustee's Motion to Expunge Bankruptcy Filing, and Motion to Impose Sanctions under 11 U.S.C. § 105, at 5. After receiving an inquiry about T.H.'s case from the U.S. Trustee's Office, Zooberg retrieved T.H.'s file from storage and discovered that the file was empty. UST Ex. 7, Letter from Zooberg, at 2. Regarding his inability to produce a signed Petition, Zooberg initially concluded that "the only possible explanation that I can provide for this is that the original signed petition was accidentally sent home with [T.H.], along with a copy." *Id.* at 3. Zooberg admitted at the hearing on October 29, 2014, however, that he no longer believed T.H. took a signed document with her when she left on August 20, 2013. Tr. at 69.[37] Zooberg admitted that he had no factual basis for believing that T.H. took the signed Petition with her when she left as he did not see her do this. *Id.*

The Court accepts T.H.'s testimony as to the nature of her contact with Zooberg and the Boardman Firm following the August 20, 2013 meeting as credible. The Court finds Zooberg's letter to be conclusory, void of any willingness to accept any version of the situation other than his own, and its tone to be disappointingly dismissive and unprofessional. Zooberg did not provide specific factual support for his position that T.H. authorized the filing except to say that it seems "incredibly unlikely." UST Ex. 7, Letter from Zooberg, at 2. Although Zooberg stated in his letter that the only explanation for the miss-

37. The Court notes that, in direct contrast to the representations he made in his letter to the U.S. Trustee, Zooberg testified that on August 20, 2013, he "believed at the time that [he] had put [the Petition] in the folder...." Tr. at 74; *but see* UST Ex. 7, Letter from Zooberg, at 2 (concluding, after finding that the file did not contain the signed Petition, that "the Debtor was accidentally sent home with both the signed and unsigned copies of the petition.").

ing Petition was that T.H. took the Petition home, the Court finds that the only explanation supported by the facts adduced before it is that a signed petition never existed. The Court has accepted T.H.'s testimony as more credible than Zooberg's that she did not sign any documents during the August 20, 2013 meeting nor did she leave the office with any documents. The Court is disturbed by the failure of Zooberg and the Boardman Firm to communicate with or contact T.H. following the filing of the Petition. The Court finds Zooberg's interaction with T.H. following the August 20, 2013 meeting to be highly unprofessional and inconsistent with the duties of counsel.

### E. Zooberg's Disciplinary and Compliance Record

Zooberg has not had any prior disciplinary action with the Virginia State Bar, the bankruptcy court, or any other court. Tr. at 89–90. Zooberg voluntarily self-reported the matter concerning T.H. to the Virginia State Bar at his counsel's direction. *Id.* at 90. Zooberg reviewed the CM/ECF Policy Statement and Local Bankruptcy Rules 5005–1 and 5005–2 since the filing of the Amended Motion to Impose Sanctions and concluded from his review that his conduct in T.H.'s case was not in compliance with these rules. *Id.* at 89. Zooberg admitted that his failure to retain the orig-

inal signed Petition filed on behalf of T.H. was a violation of both the Local Bankruptcy Rules 5005–1 [38] and 5005–2 [39] and the CM/ECF Policy Statement. *Id.*; *see also* July 9, 2014 Transcript, at 3 (admitting his failure to retain the documents in violation of the governing rules).

In response to an internal audit conducted by his counsel, Zooberg provided 100 debtor files, consisting of fifty petitions filed by the Boardman Firm prior to August 20, 2013, and fifty petitions filed by the Boardman Firm after August 20, 2013. Tr. at 86. Zooberg was able to produce original signed copies of the petitions, original signed copies of the Exhibit D's filed with the Petitions, and signed retention letters in each of the 100 cases. *Id.* Zooberg estimated that he has filed between 300 and 400 cases since the filing of T.H.'s Petition and testified the Boardman Firm has retained the original signed petition, Exhibit D, and retention letters in each of these cases. *Id.* In response to a request from the U.S. Trustee's office to produce the original signed documents filed with the Court for three particular cases, Zooberg was able to do so to the U.S. Trustee's satisfaction.[40] *Id.* at 87–88.

The Court acknowledges Zooberg's and the Boardman Firm's efforts to amend their office policies since the filing of the

---

**38.** Local Bankruptcy Rule 5005–1 (Ver.6/27/11) effective at the time of the filing of the Petition in this case states, in relevant part: "Each petition filed must include an unsworn declaration with the signature of all debtors and must be verified by the signature of the debtor's attorney, if any." Local Bankruptcy Rule 5005–1(D)(1). The current version of the rule remains unchanged.

**39.** Local Bankruptcy Rule 5005–2 (Ver. 6/27/11) effective at the time of the filing of the Petition in this case states, in relevant part: "All petitions, motions, memoranda of law, or other pleadings, documents and papers filed with the Court shall be filed

through the Case Management/Electronic Case Files System (CM/ECF), except as otherwise provided for in the Court's Electronic Case Files Policy (CM/ECF Policy), which shall be promulgated and revised as specified by the Clerk." Local Bankruptcy Rule 5005–2. The current version of the rule remains unchanged.

**40.** Zooberg testified regarding two documents that he received detailing the U.S. Trustee's request for files in two of the three cases. Tr. at 87. Counsel for Zooberg did not move to introduce these documents into evidence. *See id.* at 88.

Amended Motion to Impose Sanctions and the Motion to Expunge T.H.'s case and their willingness to participate in audits and reviews of their other files. *See id.* at 86–88. The Court further acknowledges that Zooberg has not had a demonstrated pattern of misconduct in his five years of practice before it or prior incidence of ethical misconduct. *Id.* at 89–90. Having no prior pattern of misconduct is unquestionably significant to the Court; it does not, however, exculpate the extensive misconduct that has occurred in this one most sad incident. Zooberg admitted that he filed this Petition "recklessly," and, in fact, he admitted that he should not have filed this bankruptcy case at all. *Id.* at 94, 95. With these admissions, the Court agrees. Regardless of any changes since instituted by Zooberg and the Boardman Firm, the Court finds that Zooberg's conduct in this case fell far short of his fundamental professional obligations. The Court agrees with T.H. that Zooberg's conduct was unethical. *Id.* at 36; *see also id.* at 43. Likewise, the Court finds that the practices and procedures of the Boardman Firm exhibited in this case fell far below any appropriate standard of care required of those granted the privilege to practice before the Court.

## III. CONCLUSIONS OF LAW

The Court has the inherent authority to regulate the conduct of the attorneys who appear and practice before it. 11 U.S.C. § 105(a); *see also In re Parker,* No. 3:14cv241, 2014 WL 4809844, *5 (E.D.Va. Sept. 26, 2014) (slip copy); *In re Tran,* No. 14–11837–BFK, 2014 WL 5421575, *5 (Bankr.E.D.Va. Oct. 17, 2014) (slip copy); *In re Shelton,* 428 B.R. 457, 459 (Bankr.N.D.Ohio 2010); *In re Alvarado,* 363 B.R. 484, 492 (Bankr.E.D.Va.2007); *In re Brock,* Case No. 04–08646–W, 2004 Bankr.LEXIS 2536, *17 (Bankr.D.S.C. Oct. 13, 2004) (slip copy); *In re Wenk,* 296 B.R. 719, 728 (Bankr.E.D.Va.2002). The Court has the "inherent power 'to control admission to its bar and to discipline attorneys who appear before it.' This power to sanction has been recognized in the Fourth Circuit as with the Bankruptcy Court...." *In re Parker,* 2014 WL 4809844, at *5 (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)) (citing *McGahren v. First Citizens Bank & Trust Co. (In re Weiss),* 111 F.3d 1159, 1169 (4th Cir.1997)). The Court has the authority under Federal Rule of Bankruptcy Procedure 9011(c) to sanction attorneys and law firms for violations of Rule 9011, which requires an attorney to sign and certify the veracity of all pleadings filed in this Court.[41] Fed. R. Bankr. P. 9011; *see also In re Smith,* No. 13–31565–KLP, 2014 WL 128385, *7 (Bankr.E.D.Va. Jan. 14, 2014) (slip copy), *aff'd sub nom. In re Parker,* 2014 WL 4809844, at *8–9; *In re Shelton,* 428 B.R. at 459; *In re Alvarado,* 363 B.R. at 492. The Court takes very seriously its "duty to protect an unsuspecting public from attorneys who fail to perform competently and professionally...." *In re Smith,* 2014 WL 128385, at *7. The Court must exercise discretion when imposing sanctions under 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9011. Its sanctioning authority must be performed with "re-

---

**41.** In relevant part, Rule 9011(b) provides: "By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." Fed. R. Bankr. P. 9011(b).

straint and discretion." *Chambers*, 501 U.S. at 44–45, 111 S.Ct. 2123 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). There is no duty that the Court finds more unpleasant or less fulfilling than disciplining the attorneys that appear before it. Nonetheless, it is one of the most important duties that the Court must discharge because protecting the integrity of the system is paramount.

## A. Jurisdiction

█ The Court's jurisdiction to decide the issue of sanctions is not affected by the status of a case, whether dismissed or closed, or by whether a discharge has been entered. *See, e.g., Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P.* (*In re White–Robinson*), 777 F.3d 792, 795–96 (5th Cir.2015) (holding that the bankruptcy court retained jurisdiction to enforce sanctions against an attorney notwithstanding the debtor's bankruptcy discharge); *In re Dental Profile, Inc.*, 446 B.R. 885, 890 (Bankr.N.D.Ill.2011) (holding that the bankruptcy court had jurisdiction to decide the issue of sanctions against the debtor and the attorneys in a dismissed case); *In re Light*, 357 B.R. 23, 31 n. 5 (Bankr.N.D.N.Y.2006) (holding that the bankruptcy court retained jurisdiction to impose sanctions under Federal Rule of Bankruptcy Procedure 9011 notwithstanding the dismissal of the debtor's case); *In re Henderson*, 360 B.R. 477, 484 (Bankr. D.S.C.2006) ("The fact that these cases are closed does not divest this Court of jurisdiction as jurisdiction is not dependent on the technicality of a case being 'open.'") (citing *In re Green*, No. 03–05607–W (Bankr. D.S.C. Apr. 1, 2005) (slip copy)); *In re Kitchin*, 327 B.R. 337, 359 (Bankr.

N.D.Ill.2005) (holding that the bankruptcy court retains jurisdiction to decide the issue of sanctions after the closure of a bankruptcy case); *In re Neiman*, 257 B.R. 105, 110 (Bankr.S.D.Fla.2001) (holding that the bankruptcy court retains jurisdiction to decide sanctions under Federal Rule of Bankruptcy 9011 after the dismissal of a bankruptcy case). The closure of a bankruptcy case does not obviate an attorney's conduct in filing and handling a case. The Court's sanctioning authority is neither altered nor diminished by the occasion of the dismissal or closure of a case. Indeed, if the Court's authority to sanction attorneys that practice before it terminated at the dismissal or closure of the case, attorneys whose very conduct contributes adversely to the filing and dismissal or closure of the case, as was the circumstance in the instant case, would have a perverse incentive to allow active cases to be improperly dismissed and thereafter closed to avoid sanction or discipline. *See In re Henderson*, 360 B.R. at 484 ("To hold otherwise, would allow [the attorney] and other attorneys to escape review of their performance based upon their very failure to provide adequate services to debtors which results in the dismissal of the case.").

█ Similarly, the Court retains jurisdiction to sanction an attorney that practices before it after a bankruptcy filing is expunged.[42] Expungement of a bankruptcy filing is "an extraordinary remedy." *In re Buppelmann*, 269 B.R. 341, 342 (Bankr.M.D.Pa.2001); *In re Whitener*, 57 B.R. 707, 708 (Bankr.E.D.Va.1986). In a bankruptcy case, the purpose of expungement is to protect the legal rights of the debtor, and the remedy is available only in certain extraordinary circumstances, such as when a debtor did not authorize the

---

42. The issue of jurisdiction to sanction in an expunged case is an issue of first impression in this jurisdiction.

filing of a bankruptcy purportedly made on her behalf.[43] *See, e.g., In re Joyce,* 399 B.R. 382, 386 n. 2 (Bankr.D.Del.2009) ("Expungement [in a bankruptcy case] is directed toward the public's notification of bankruptcy filings ..., essentially rectifying via purging a fraudulent or otherwise incorrect filing."); *In re Storay,* 364 B.R. 194, 196–97 (Bankr.D.S.C.2006) (expunging a bankruptcy filing of joint debtors who signed a blank petition but did not review or authorize the filing of the completed petition); *In re Brock,* 2004 Bankr.LEXIS 2536, at *7–8 (expunging, under the authority of 11 U.S.C. §§ 105(a) and 107(b)(2) and Federal Rule of Bankruptcy Procedure 9018, the bankruptcy records of joint debtors who did not authorize the filing of a bankruptcy petition).

▉ The dismissal, closure, and expungement of T.H.'s case does not deprive this Court of the authority or jurisdiction to determine appropriate sanctions against Zooberg and the Boardman Firm.[44] Indeed, counsel for Zooberg and the Boardman Firm acknowledged the Court retains jurisdiction to decide the issue of sanctions.[45] The Court's inherent authority to appropriately sanction practitioners that appear before it encompasses the entirety of an attorney's conduct in a case and is not diminished by the dismissal, closure, or expungement of a case. The dismissal, closure, and expungement of T.H.'s case does not eradicate the egregious conduct committed by Zooberg and the Boardman Firm in this case; the expungement of this case was an equitable remedy fashioned solely to protect T.H.'s interests by removing her case filing from the public record.[46] Likewise, the expungement of the case does not obviate the existence of the filing of the case nor the troubling circumstances surrounding the filing of this case. Accordingly, the Court's discretion to impose appropriate sanctions against Zooberg and the Boardman Firm is unchanged by the expungement of T.H.'s case.

### B. Zooberg's Conduct

The Court will first address Zooberg's conduct in this case and will then address the conduct of the Boardman Firm.

### i. Zooberg's Failure to Obtain and Retain T.H.'s Wet Signature on the Petition and Exhibit D

▉ Judge Phillips has aptly stated: "Despite the changes to the legal sys-

---

**43.** As Dean Peter C. Alexander explained:

> Bankruptcy expungement is not materially different from expungement in criminal cases. In bankruptcy, an expungement order removes information about a bankruptcy filing from the public record, wiping the slate clean of any reference to the filing. The practical effect of a bankruptcy expungement order is to allow an individual ... truthfully to answer no to the question "have you ever filed bankruptcy," to deprive credit reporting agencies of the ability to note a bankruptcy filing on an individual's credit history, and to deprive creditors of the ability to use the bankruptcy filing as a basis to deny someone credit.

Peter C. Alexander, *Identity Theft and Bankruptcy Expungement,* 77 Am. Bankr.L.J. 409, 412 (2003).

**44.** T.H.'s case was dismissed by order entered on September 6, 2013. Docket No. 12. The case was closed on September 20, 2013. *Id.* No. 15. At the hearing on July 9, 2014, the Court granted the U.S. Trustee's Motion to Expunge Bankruptcy Filing. *Id.* No. 29; July 9, 2014 Transcript, at 12–13. On July 18, 2014, the Court entered the Order Granting Motion to Expunge Bankruptcy Filing. Docket No. 30.

**45.** Counsel for Zooberg and the Boardman Firm stated: "Any doubt about the inherent power of the Court to enforce sanctions? Absolutely not." Tr. at 111.

**46.** In granting the expungement, the Court made no factual findings as to the conduct of either Zooberg or the Boardman Firm.

tem occasioned by the development of [electronic case filing] technology, the standards of care applicable to attorneys remain undiminished and the veracity, integrity and competence of attorneys continues to be essential to our system of justice." *In re Smith*, 2014 WL 128385, at *4. A basic obligation of an attorney filing a bankruptcy petition is that, prior to filing, the attorney obtains the debtor's authorization and original wet signature; this requirement is applicable regardless of the mechanism used to effectuate the filing. In instances of electronic filing, under the governing rules of this Court, a signatory's signature is affixed electronically and designated by "/s/," constituting that individual's signature. *See In re Wenk*, 296 B.R. at 725 n. 6. The presence of an electronic signature on any document filed in this Court is a representation to the Court that the signatory herself authorized and physically signed the document. *See In re Smith*, 2014 WL 128385, at *4–5; *In re Alvarado*, 363 B.R. at 491 (citing *In re Wenk*, 296 B.R. at 725).

 Zooberg's filing of the Petition and Exhibit D containing "/s/" followed by T.H.'s name, constituting her electronic signature, despite his failure to obtain and retain T.H.'s original signature, represents clear violations of the governing rules of

this Court and constitutes abrogations of his duties to this Court. Federal Rule of Bankruptcy Procedure 1008 requires, "All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."[47] Fed. R. Bankr. P. 1008; *see also In re Smith*, 2014 WL 128385, at *5; *In re Alvarado*, 363 B.R. at 491 n. 22; *In re Wenk*, 296 B.R. at 725. Local Bankruptcy Rule 5005–1(D)(1) requires that "[e]ach [voluntary] petition filed must include an unsworn declaration *with the signature of all debtors* and must be verified by the signature of the debtor's attorney, if any." Local Bankruptcy Rule (hereinafter, "LBR") 50051(D)(1) (emphasis added); *see also In re Tran*, 2014 WL 5421575, at *6. Local Bankruptcy Rule 5005–2 provides that the electronic filing of petitions and documents is governed by the CM/ECF Policy Statement. LBR 5005–2. The CM/ECF Policy Statement requires that all filings made electronically contain the appropriate original signatures. CM/ECF Policy Statement 8. The CM/ECF Policy Statement further provides that "[a]n electronic filing by a User constitutes that person's signature under [Federal Rule of Bankruptcy Procedure] 9011 and LBR 5005–1(C)(4)." *Id.* Thus,

---

**47.** By endorsing a petition and Exhibit D, the debtor also represents the veracity of the pleadings. By affixing T.H.'s signature without her authorization, Zooberg risked causing T.H. to make a series of misrepresentations to this Court as to the veracity of the information contained in the filed Petition and Exhibit D.

In bankruptcy, the client's signature is also important. A debtor must sign a petition seeking bankruptcy relief. And all schedules, the statement of financial affairs, and other documents must be not only signed by the debtor, but that signature must follow the debtor's verification, made under penalty of perjury, that the paper to which it is affixed has been reviewed and is

true and correct to the best of the debtor's knowledge, information, and belief.

...[B]ankruptcy debtors rely on their attorney to shepherd them through unfamiliar and complicated territory. They may not know, until advised by their lawyer, that the signatures they put to bankruptcy petitions, schedules and statements must be "verified" and what that term connotes. They may not know that verifying and signing papers that contain false or inaccurate information exposes them to loss of discharge and, perhaps, criminal prosecution. *In re Daw*, No. 09–00690–TLM, 2011 WL 231362, *1 (Bankr.D.Idaho Jan. 24, 2011)(citing 11 U.S.C. § 727(a); 18 U.S.C. § 152; Fed. R. Bankr. P. 1008).

under the CM/ECF Policy Statement, an attorney who files a document electronically represents to the Court that he has obtained the original signature of the debtor. CM/ECF Policy Statement 8; *see also In re Wenk*, 296 B.R. at 725. "When counsel files a petition electronically, the attorney represents to the Court that he or she has secured an originally executed petition physically signed by the debtor *prior to* electronically filing the case." *In re Alvarado*, 363 B.R. at 491 (emphasis added) (citing *In re Wenk*, 296 B.R. at 725). The Court's rules and policies further the principles embodied in Federal Rule of Bankruptcy Procedure 9011 to ensure the veracity of pleadings. Zooberg plainly violated the requirements of Local Bankruptcy Rule 50051(D)(1) and the CM/ECF Policy Statement by failing to obtain T.H.'s original physical signature prior to filing the Petition. By filing the Petition and Exhibit D containing T.H.'s electronic signature designated by "/s/," Zooberg misrepresented to this Court that he had first obtained T.H.'s actual signature prior to filing the documents in this case.

Zooberg further violated the rules of this Court and the CM/ECF Policy Statement by failing to retain the original signed petition and Exhibit D that were electronically filed in this case. Indeed, such documents could not be retained if such documents never existed, as this Court has concluded. The CM/ECF Policy Statement requires that all "[d]ocuments that are electronically filed and require original signatures shall be maintained by the User until 3 years after the closing of the case."[48] CM/ECF Policy Statement 7; *see also In re Tran*, 2014 WL 5421575, at *6. By failing to produce an original signed petition and Exhibit D in this case, Zooberg violated the CM/ECF Policy Statement requiring retention of all original signed documents filed in this Court. It is of no moment that Zooberg was able to comply with either the internal audit conducted by his counsel or the U.S. Trustee's Office's limited review of other, unrelated cases, because under the CM/ECF Policy Statement, Zooberg is required to retain all, not merely some, of the original signed documents that he files in this Court for a period of three years from the date of filing. CM/ECF Policy Statement 7. Zooberg failed to comply with the this Court's CM/ECF Policy Statement by not only failing to obtain T.H.'s physical signature but also by failing to retain an original signed petition and Exhibit D for a period of three years from the date of filing.

ii. Zooberg's Failure to Obtain T.H.'s Authorization to File Bankruptcy

▮▮▮▮ Perhaps more troubling than Zooberg's disturbing failure to obtain and retain T.H.'s wet signature on any document in this case was his filing of the Petition without T.H.'s authorization. It is fundamental to the filing of bankruptcy that a potential debtor actually intends to file, in good faith, for bankruptcy relief. "[A]n attorney needs to know for certain that his client wishes to file for bankruptcy before a petition is filed." *Briggs v. Labarge (In re Phillips )*, 433 F.3d 1068, 1071 (8th Cir.2006). The attorney's role is to provide counsel and advise a potential debtor on the effects and consequences of

---

**48.** The CM/ECF Policy Statement further states: "If in the ordinary course of the User's business, the User maintains imaged copies of that person's records, the User may retain an imaged copy in lieu of the document with the original signature to the same extent that the User otherwise retains imaged records in the ordinary course of the User's business." CM/ECF Policy Statement 7. Zooberg and the Boardman Firm did not provide an imaged copy of an original signed petition in this case.

filing bankruptcy, not to unilaterally make that most personal and important decision on behalf of the individual.[49] *See id*; *see also In re Tran*, 2014 WL 5421575, at *7 ("The filing of a bankruptcy petition is an important, life-altering decision."); *In re Wenk*, 296 B.R. at 726 ("Bankruptcy is a very personal action which should only be undertaken by the individual."). The significant and personal decision to file bankruptcy belongs solely with the potential debtor. *See In re Raymond*, 12 B.R. 906, 907 (Bankr.E.D.Va.1981) ("We perceive bankruptcy to be a very personal matter which only the individual can voluntarily exercise."). By filing the Petition in this case without T.H.'s authorization, Zooberg wrongfully deprived T.H. of the opportunity to make such a decision as significant as the filing for bankruptcy protection for herself and her family. Usurping T.H.'s decision-making power undermined her ability to consider that filing a bankruptcy triggers not only numerous responsibilities for a debtor in an active bankruptcy case but also a myriad of personal and financial consequences. The responsibilities of a debtor in an active Chapter 13 bankruptcy case include the requirement to attend a statutorily mandated meeting of creditors; file accurate schedules, statements, and a Chapter 13 plan; and make regular payments under a confirmed Chapter 13 plan. *See* 11 U.S.C. §§ 341, 521 1321, 1326. The consequences of filing continue well after the closure of a bankruptcy case. For example, as T.H. personally experienced, the filing of a bankruptcy petition can detrimentally affect a debtor's credit history

and ability to obtain credit well after the filing of a bankruptcy petition. *See* Tr. at 31.

▮▮▮▮ In filing a case electronically, as with a paper filing, an attorney represents to this Court that the signatures on the filing are in fact the genuine signatures of the debtor and that the attorney obtained the proper authorization to affix those signatures prior to filing the case. *In re Alvarado*, 363 B.R. at 491 & n. 21 (citing *In re Wenk*, 296 B.R. at 725). There is a "general presumption that a signed petition indicates that the party filing the petition had the authority to do so." *In re Storay*, 364 B.R. 194, 196 (Bankr.D.S.C.2006) (citing *In re Buppelmann*, 269 B.R. 341, 342–43 (Bankr. M.D.Pa.2001)). This presumption can be refuted by demonstrating that the debtor did not in fact authorize the filing of the petition. *See id.* (finding from the "credible and convincing testimony" of the wife-debtor that the debtors did not authorize the filing of the petition). By filing the Petition and Exhibit D with T.H.'s electronic signature, Zooberg misrepresented to this Court that he had obtained T.H.'s wet signature and authorization to file, when in fact he had neither her signature nor her authorization, thereby violating the governing rules of this Court. In *In re Wenk*, then-Chief Judge Tice equated the affixing of an electronic signature to a petition without a debtor's authorization to the physical forgery of the debtor's wet signature. *In re Wenk*, 296 B.R. at 725–26 (citing *In re Ludwick*, 185 B.R. 238, 241

---

**49.** As succinctly explained by Judge Bonney, "Bankruptcy is a serious step; it holds its stigmas still. It is a unique judicial process where one is laid bare, financially. And remember this it results in a court record for future employers, creditors, friends, relatives and the public to see." *In re Raymond*, 12 B.R. 906, 907 (Bankr.E.D.Va.1981). As an example, a bankruptcy filing can have a significant adverse effect on a debtor's credit report for a significant period of time after the filing. The Fair Credit Reporting Act permits a credit reporting agency to report the filing of a bankruptcy petition for up to ten years on a consumer's credit report. Fair Credit Reporting Act, 15 U.S.C. § 1681c(a)(1); *see also In re Joyce*, 399 B.R. 382, 385 (Bankr. D.Del.2009); *In re Wenk*, 296 B.R. at 726.

(Bankr.W.D.Mich.1995)). Affixing the electronic signature of an individual who did not in fact sign or authorize the signing indeed amounts to forgery. This Court has found the testimony of T.H. to be highly credible and has concluded that she did not authorize the filing of the Petition in this case. Therefore, Zooberg violated the governing rules of this Court by filing the Petition without T.H.'s authorization.

■ It is imperative that an attorney ensure, prior to filing a bankruptcy petition, that a potential debtor understands all of the consequences of filing bankruptcy and the responsibilities of being a debtor in a bankruptcy case. An attorney must also ensure that a potential debtor, knowing and appreciating the consequences of filing a bankruptcy petition, has the present intention of filing bankruptcy. *See In re Phillips,* 433 F.3d at 1071 ("[The attorney] should have had a personal conversation with the debtor before filing a bankruptcy on her behalf."). Zooberg failed to ensure, prior to affixing her electronic signature to the Petition, T.H. desired to file bankruptcy. Even if the Court were to find, which it does not, Zooberg had T.H.'s authority to file the Petition on her behalf, Zooberg failed to engage T.H. in any discussion about the consequences and responsibilities of filing for bankruptcy protection. Zooberg did not have an understanding of T.H.'s personal and financial circumstances and, without such information, not only failed, but was unable, to appropriately counsel T.H. on filing for bankruptcy. Instead, Zooberg allowed the important decision of whether to file bankruptcy to be commandeered by himself and by Joshua Blum, an individual with whom he had no prior contact or relationship and who did not represent T.H, and not made by T.H. herself. Zooberg violated the governing rules of this Court by filing the Petition without

securing her authority and despite her communicated lack of intention and desire to file bankruptcy.

### iii. Zooberg's Misrepresentations in the Petition and Exhibit D

■ The contents of a petition or any other filing submitted to this Court constitute a series of representations by the debtor and, if represented, her attorney. Federal Rule of Bankruptcy Procedure 9011 provides that by filing a document in this Court, the attorney certifies the veracity of the representations made and the appropriateness of the filing. Fed. R. Bankr. P. 9011(b). As Judge Huennenkens remarked: "As officers of the court, attorneys have a special responsibility for upholding the quality of justice within the judicial process. . . . The Court depends on the veracity, integrity and competence of the attorneys that practice before it." *In re Alvarado,* 363 B.R. at 490. This Court relies upon the representations made by attorneys in the filings submitted to it; the efficient functioning of the Bankruptcy Court system necessitates such reliance.

■ The required representations in a complete bankruptcy filing are numerous, including representations of the debtor's assets, liabilities, creditors, income, and expenses. Federal Rule of Bankruptcy Procedure 9011 requires attorneys sign all documents filed in a case to certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the allegations and other factual contentions have evidentiary support." Fed. R. Bankr. P. 9011(b)(3); *see In re Tran,* 2014 WL 5421575, at *7 (citing 11 U.S.C. §§ 109(e), 1325(a)(6)) ("In a Chapter 13 case, the attorney is making a representation to the Court in filing a petition that the debtor has regular income and that the

debtor's secured and unsecured debts do not exceed the allowable limits for a Chapter 13 case, not to mention that the debtor is capable of filing a feasible plan."); *see also In re Smith*, 2014 WL 128385, at *5; *In re Shelton*, 428 B.R. 457, 459–60 (Bankr.N.D.Ohio 2010). Emergency circumstances do not obviate this requirement. The Court is familiar with the filing of so-called "skeleton petitions" in instances where immediate filing will halt, for example, a foreclosure, and the required information is shortly thereafter supplemented by additional filings. Even in the case of filing a "skeleton petition," Rule 9011 mandates the attorney certify the veracity of the pleadings and make certain basic representations, including that the debtor is eligible to file under a particular chapter and that the filing is appropriate for the debtor's circumstances. Fed. R. Bankr. P. 9011(b).

When an inaccurate certification has been made, such certification may nonetheless be appropriate, depending upon the attorney's basis for making the representation and certification. *See In re Taylor*, 655 F.3d 274, 283–84 (3rd Cir.2011) (holding that a bankruptcy court should consider the reasonableness of the attorney's inquiry in determining whether sanctions are warranted). In determining the appropriateness of an inaccurate certification, the threshold inquiry is the attorney's basis for the certification and whether the attorney conducted an appropriate inquiry of the facts and circumstances of the case prior to making the representation. *See In re Tran*, 2014 WL 5421575, at *7 (finding "[t]here can be no 'inquiry reasonable under the circumstances' [as required by Federal Rule of Bankruptcy Procedure 9011] where the attorney has not met with the client prior to filing the petition. . . .").

■ The inquiry that Zooberg conducted of T.H.'s personal and financial situa-

tion was not reasonable under the circumstances, and in reality, was virtually non-existent. Zooberg inappropriately relied on incomplete, insufficient, and ultimately inaccurate information that he gleaned from his brief conversations with Joshua Blum, a person with whom he had no prior contact or relationship, without making any appropriate effort to ascertain the appropriateness of filing this case from T.H. The explanation that the decision to file the case was rushed because of an impending foreclosure of a home that T.H. did not in fact reside in or owe an obligation on does not obviate Zooberg's basic duty under Rule 9011 to represent to this Court that the filing was appropriate and the representations contained therein are accurate. *See id.* ("[T]he fact that the client's home is scheduled for an imminent foreclosure does not excuse the reasonable inquiry requirement of Rule 9011(b)."). Even under what Zooberg perceived to be exigent circumstances, Zooberg's admitted lack of any inquiry into T.H.'s personal and financial circumstances was inexcusably wanting, as he failed to ask T.H. any meaningful question about her personal and financial circumstances, including about her assets, her income, her liabilities, or her creditors. *See* Tr. at 58–61.

The numerous misrepresentations contained in the Petition and Exhibit D filed in this case were caused by Zooberg's abject failure to ask T.H. certain vital questions and make any appropriate inquiry of her circumstances. Zooberg admitted on several occasions that he failed to make any reasonable inquiry into T.H.'s personal and financial circumstances before filing the Petition. *See, e.g.*, Tr. at 55, 72–73, 84–85, 95, 103. The Court finds that Zooberg made a series of regrettable misrepresentations in filing the Petition and Exhibit D in this case due to his troubling reliance on Joshua Blum's statements and

his failure to properly investigate T.H.'s personal and financial circumstances. Zooberg violated Federal Rule of Bankruptcy Procedure 9011(b) by certifying and misrepresenting to the Court in his filings in this case that he had a good faith basis for filing this Petition and that the representations made therein had evidentiary support, when the filing of the Petition was unauthorized and representations contained in the Petition were inaccurate and not supported by the facts of T.H.'s circumstances.

### iv. Zooberg's Failure to Fulfill his Professional Responsibility Obligations

Even if the Court were to accept Zooberg's position that he had T.H.'s authorization to file the Petition, which it does not, Zooberg's conduct in this case fell far short of his professional obligations to and the expectations of this Court.[50] Local Bankruptcy Rule 2090–1(I) provides that the Virginia Rules of Professional Conduct govern the ethical and professional responsibility standards for the practice of law before this Court.[51] LBR 2090–1(I); *see also In re Smith*, 2014 WL 128385, at *6. Virginia Rule of Professional Conduct 1.3 requires that a lawyer act with "rea-

sonable diligence." Va. Rule of Prof'l Conduct 1.3(a). Black's Law Dictionary defines diligence as "[a] continual effort to accomplish something" and "care; caution; the attention required from a person in a given situation." *Black's Law Dictionary* (9th ed. 2009). Due diligence is defined as "the diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation."[52] *Id.* "A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Va. Rule of Prof'l Conduct 1.3, cmt. 1. "[D]iligence includes not only an adversarial strategy but also the vigorous pursuit of the client's interest in reaching a solution that satisfies the interests of all parties." Va. Rule of Prof'l Conduct 1.3, cmt. 2.

Zooberg's failures to act with reasonable diligence in this case are manifest. Zooberg failed to act with any semblance of diligence in filing the Petition by failing to ensure that T.H. had authorized the filing. Even if this Court were to accept that Zooberg had T.H.'s authorization to file the Petition, which it does not, Zooberg's filing of the Petition under the circum-

---

**50.** The Court does not find that a genuine attorney-client relationship existed between T.H. and Zooberg. However, in filing a petition and Exhibit D in this Court purportedly on behalf of T.H., Zooberg bore the responsibilities of an attorney-client relationship. Zooberg's conduct before this Court, by filing and endorsing a petition and commencing this bankruptcy filing, implied that he represented T.H. To consider an attorney's conduct acceptable under the Virginia Rules of Professional Conduct in this case because a genuine attorney-client relationship did not exist would create a perverse incentive and would violate the spirit of the Virginia Rules of Professional Conduct. *See Barrett v. Va. State Bar*, 272 Va. 260, 634 S.E.2d 341, 345 (2006) ("The Rules of Professional Conduct are designed to insure the integrity and fairness of the legal process. It would be a

manifest absurdity and a distortion of these Rules if a lawyer representing himself commits an act that violates the Rules but is able to escape accountability for such violation solely because the lawyer is representing himself."). The Court makes no finding as to the existence of an attorney-client relationship for any purpose.

**51.** As Judge Huennekens remarked: "[The Virginia Rules of Professional Conduct] outline the *mandatory minimum* level of acceptable conduct for attorneys." *In re Alvarado*, 363 B.R. at 490 (citing *In re Soulisak*, 227 B.R. 77 (Bankr.E.D.Va.1998)).

**52.** Black's Law Dictionary notes that due diligence is also termed reasonable diligence. *Black's Law Dictionary* (9th ed. 2009).

stances of this case and with only a cursory understanding of T.H.'s circumstances reflects Zooberg's complete failure to act with a modicum of diligence. Zooberg admitted on several occasions that he failed to make any reasonable inquiry into T.H.'s personal and financial circumstances before filing the Petition. *See* Tr. at 55, 72–73, 84–85, 95, 103. Any perceived exigent circumstances do not extinguish this basic obligation to act with reasonable diligence.[53] Consequently, the Court concludes that Zooberg failed to act diligently by filing a petition without any understanding of T.H.'s personal and financial circumstances.

Aside from the most disturbing conduct of filing an unauthorized petition, Zooberg's failure to competently and promptly act in this case greatly troubles the Court. Even if the Court were to assume that the Petition was authorized by T.H., the Court would still find Zooberg's actions to be highly problematic. Zooberg allowed this case to languish and ultimately be dismissed. Zooberg failed to ensure that T.H. returned to the Boardman Firm office to complete and file the remaining documents, including schedules and a Chapter 13 plan. Zooberg allowed the case to lapse and ultimately be dismissed, despite receiving numerous electronic notifications from the Court, without even attempting to fulfill his minimum professional obligation to act competently and diligently in handling this case. Even if this Petition were filed appropriately and with T.H.'s authorization, Zooberg's failure to act promptly and with a modicum of diligence in this case represents his abject failure to fulfill one of his basic pro-

fessional obligations. By failing to appropriately investigate T.H.'s circumstances, failing to properly counsel T.H. on filing bankruptcy, and proceeding to file the Petition without any meaningful understanding of T.H.'s circumstances, Zooberg violated the Virginia Rules of Professional Conduct requiring him to act with reasonable diligence. Va. Rule of Prof'l Conduct 1.3.

█ Under the Virginia Rules of Professional Conduct, an attorney has an obligation to communicate regularly and appropriately with his client about the client's matter.[54] Virginia Rule of Professional Conduct 1.4(a) provides: "A lawyer shall keep a client reasonably informed about the status of a matter . . . ." Rule 1.4(a); *see also In re Alvarado*, 363 B.R. at 490 ("Counsel must effectively communicate with their clients."). Zooberg failed to appropriately communicate with T.H. and to keep her reasonably informed on the status of her case. Despite receiving several automatically, electronically generated notifications regarding activity in T.H.'s case, including notifications warning of dismissal of the case if certain documents were not filed and actions not taken, Zooberg failed to ensure that he communicated regularly and appropriately with T.H. regarding the case. Zooberg's failure to contact T.H. post-filing is most disturbing considering the extensive activity in the case, including the case's eventual dismissal. It is not acceptable to this Court for Zooberg to fail to make a good faith effort to attempt communication with T.H., particularly when the failure to do so re-

---

**53.** Indeed, Virginia Rule of Professional Conduct 1.16(a)(1) requires an attorney to decline a potential representation "if the representation will result in violation of the Rules of Professional Conduct or other law." The perceived exigent circumstances (here, that a

foreclosure was imminent) in no way justify Zooberg's violations of his professional obligations.

**54.** *See supra* note 50.

sults in the dismissal of a case.[55] Zooberg's lack of any communication with T.H. following the brief August 20, 2013 meeting until months later when T.H. initiated communication upon discovering the unwanted filing is completely unacceptable to this Court and is a breach of his basic obligation to communicate with an individual in whose name and purportedly on whose behalf he filed a petition and to keep that individual reasonably informed of the status of the matter.

 An attorney has an obligation to appropriately counsel a client and appropriately explain the law to allow the client to make informed decisions. Virginia Rule of Professional Conduct 1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." This obligation is all the more critical in bankruptcy representations where the debtor may lack a sophisticated understanding of the intricacies of the bankruptcy process and the legal effect of certain actions. *See In re Smith*, 2014 WL 128385, at *6 ("Bankruptcy clients rely on their attorneys to explain an unfamiliar and complicated process so that they can make informed, appropriate decisions.") (citing *In re Alvarado*, 363 B.R. at 487). The decision whether to file bankruptcy is a monumental, personal, and important decision in any potential debtor's life.[56] *In re Tran*, 2014 WL 5421575, at *6. It is the responsibility of the bankruptcy attorney to counsel and advise a potential debtor of

the consequences and effects of this important decision and to assist the individual in determining whether filing is an appropriate and desired course of action. *See In re Smith*, 2014 WL 128385, at *6 (citing *In re Daw*, No. 09–00690–TLM, 2011 WL 231362, *4 (Bankr.D.Idaho Jan. 24, 2011) (slip copy)). As explained by Judge Phillips, "[A]n attorney has an affirmative duty to meet with his clients and counsel them regarding the legal significance of their actions." *Id.* (citing *In re Dalton*, 95 B.R. 857, 860 (Bankr.M.D.Ga. 1989)).

 In this case, Zooberg failed to fulfill his professional obligation by neither effectively communicating with T.H. to allow her to make an informed decision regarding whether to file bankruptcy nor discussing with T.H. the consequences of filing for bankruptcy. Zooberg also failed to counsel T.H. on the effects of filing for bankruptcy under the different chapters of the Bankruptcy Code. Zooberg, in fact, could not have appropriately counseled T.H. on the appropriateness of filing under a particular chapter of the Bankruptcy Code. Because Zooberg had no knowledge of T.H.'s income, assets, liabilities, or creditors, he did not have a sufficient understanding of T.H.'s circumstances to appropriately advise T.H. regarding which chapter would be most appropriate for her circumstances. He likewise failed to inform T.H. of the subsequent activity in the case after filing, depriving her of the opportunity to make decisions regarding the

---

55. As comment 3 to Rule 1.3 states, "Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions...." Va. Rule of Prof'l Conduct 1.3, cmt. 3.

56. Judge Kenney further articulated: "The client must consider the risks (the damage to one's credit, the transactional fees, and the possibility of a failed Chapter 13 plan after paying into the plan for some period of time) with the potential rewards (the automatic stay, a discharge and the possibility of a strip-off of wholly unsecured liens)." *In re Tran*, 2014 WL 5421575, at *7.

case.[57] Zooberg did not even attempt to inform T.H. of the case's ultimate dismissal. But what is most troubling to this Court, however, is the central and most disturbing occurrence in this series of events: Zooberg filed this Petition without ascertaining T.H.'s consent and authorization. He wholly deprived T.H. of the ability to make a decision, let alone an informed one, about whether she desired to file bankruptcy. In this regard, Zooberg breached his professional obligation to explain any aspect or consequence of filing this bankruptcy case, and in doing so, deprived T.H. of the opportunity make an informed decision for herself and for her family regarding whether to file bankruptcy.

■ Virginia Rule of Professional Conduct 3.1 provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous...." Va. Rule of Prof'l Conduct 3.1. Inherent in determining whether an attorney has brought an appropriate action or filed an appropriate pleading is reviewing the basis of the attorney's knowledge of the facts and circumstances of the case. In this instance, because Zooberg's own conduct, including but not limited to relying on statements made by Joshua Blum, thwarted any understanding he could have ascertained about T.H.'s circumstances and the appropriateness of her filing for bankruptcy, Zooberg could not have reasonably believed that filing this case was proper because he lacked the factual foundation to reach such a determination.

■ Virginia Rule of Professional Conduct 3.3 provides, in part, that an attorney shall display candor towards the Court and will not make a false statement of fact or law to this Court. Va. Rule of Prof'l Conduct 3.3. "Section 8.01–271.1 of the Code of Virginia states that a lawyer's signature on a pleading constitutes a certification that the lawyer believes, after reasonable inquiry, that there is a factual or legal basis for the pleading." Va. Rule of Prof'l Conduct 3.3, cmt. 3 (citing Va.Code § 8.01–271.1). Federal Rule of Bankruptcy Procedure 9011 similarly provides that an attorney's signature on a pleading filed in this Court constitutes a representation that the attorney had a good faith basis in fact or in law for filing the pleading. Fed. R. Bankr. P. 9011. In this case, Zooberg made a series of misrepresentations to this Court, perhaps most troubling the representation that he had obtained T.H.'s signature and authorization to file when he had not in fact done so. In addition to lacking T.H.'s signature and authorization, the factual misrepresentations, for which Zooberg had no basis for asserting, contained in the Petition and Exhibit D are numerous. By signing the Petition filed in this case, Zooberg certified and represented to this Court that he had a factual or legal basis for the representations made in the Petition and that such basis was formed after reasonable inquiry. Zooberg indeed admitted that he made no such reasonable inquiry of T.H.'s circumstances and made a series of representations that he had no factual basis for asserting.

This Court is extremely troubled by the egregious conduct committed by Zooberg in this case. Zooberg commenced the bankruptcy case purportedly on behalf of T.H. without her authorization. He filed the Petition and Exhibit D with T.H.'s electronic signature when he had neither obtained her authorization to do so nor

---

57. Zooberg failed to obtain appropriate and accurate contact information for T.H. during their August 20, 2013 meeting.

her original wet signature. He misrepresented to this Court several aspects of T.H.'s personal and financial circumstances without having any basis in fact for doing so. Zooberg violated the governing rules of this Court, including the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, the CM/ECF Policy Statement, and the Virginia Rules of Professional Conduct. It is regrettable that Zooberg filed the Petition in this case when he had no basis for doing so, and his conduct throughout the case is most distressing to this Court.

### C. Boardman Firm's Conduct

██ The regrettable conduct in this case is not limited to Zooberg but extends to the practices and policies of the Boardman Firm and the firm's treatment of T.H. post-filing. At the time of the filing of this Petition, the Boardman Firm had a practice of filing, on limited occasions, a petition and Exhibit D without having the debtor's required credit counseling certificate in hand. Apparently, as occurred here, the practice extended to filing a petition and Exhibit D without even verifying that a debtor had completed the required course. This practice greatly troubles the Court. The Court acknowledges that the Boardman Firm has purportedly since amended this policy, and the unfortunate misrepresentation made on the Exhibit D in this case demonstrates the soundness of terminating such practice. A signed Exhibit D constitutes a representation and certification to this Court that the debtor has fulfilled the credit counseling requirement, either by completing the requisite course or by satisfying the elements of one of the statutory exemptions from the requirement. This is a representation that is made by both the debtor in signing the Exhibit D and by the attorney in filing it. As the Court has stated above, it is of great importance that the Court can rely on the veracity of the pleadings made to

this Court for the integrity and functioning of this system. It is most distressing to this Court that the Boardman Firm had a policy in place that not only controverted the requirements of this Court, but also risked that both the attorney in filing the Exhibit D and the debtor in signing it would misrepresent to this Court that the credit counseling requirement has been satisfied.

In addition to the troubling policy regarding credit counseling certificates, this Court is distraught by the presumed retention policies of the Boardman Firm that contributed to the problems in this most unfortunate case. According to Zooberg, he obtained and retained T.H.'s original wet signature, but he admits that he has been unable to produce it in this case. Even if this Court were to conclude that the Petition was properly signed by T.H., the failure to retain the signed copy of the petition in contravention of the governing rules of this Court reflects a failure of the Boardman Firm to implement retention policies sufficient to meet the basic requirements of this Court as they related to the electronic case filing system. The Boardman Firm presumably maintains a basic practice of retaining documents, but it is clear from this case that the firm's practice is insufficient.

In addition to its troubling policies and practices, the Boardman Firm's treatment of T.H. post-filing and the reaction to her visit in March 2014 is unacceptable to this Court. The Boardman Firm failed to properly follow-up with T.H. following the filing of the Petition. The Court is not satisfied that Zooberg and the Boardman Firm put forth a sufficient good faith effort to contact T.H. to complete any of the required actions in her case following her initial visit to the office. Moreover, the Boardman Firm's reaction and reception

towards T.H. when she visited their office upon discovering the filing that she did not authorize was obstinate and wholly unprofessional. The Court accepts T.H.'s testimony that the reception was a hostile one. The accusatory tone of Zooberg's letter to the U.S. Trustee supports this conclusion. UST Ex. 7, Letter from Zooberg. It is unacceptable to this Court for the Boardman Firm to treat T.H. in such a disrespectful manner when she was seeking assistance in removing the unwanted bankruptcy filing from her record.

The policies and conduct of the Boardman Firm that contributed to this most unfortunate case greatly trouble this Court. The Court cannot countenance the failures of the Boardman Firm.

### D. Sanctions

 The Court exercises its inherent authority under 11 U.S.C. § 105(a) in deciding the issue of an appropriate sanction against an attorney and a law firm that practice before it. 11 U.S.C. § 105(a). In determining the appropriate sanctions against here, the Court is guided by Federal Rule of Bankruptcy Procedure 9011(c)(2), which provides that "[a] sanction imposed for violation of [Rule 9011] shall be limited to what is sufficient to deter repetition of such conduct, or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). The Court is mindful of its obligation to fashion an appropriate sanction that is the most minimal sanction sufficient to deter repeti-

tion of the practitioner's conduct. *Id.*; see also *In re Tran*, 2014 WL 5421575, at *9 (applying the principle of Rule 9011 in determining an appropriate sanction for an attorney's conduct that was subject to sanction under both Rule 9011 and 11 U.S.C. § 105). The appropriate sanction is one "intended to ensure future compliance with the law and the Bankruptcy Court's standards guiding bankruptcy proceedings." *In re Parker*, No. 3:14cv241, 2014 WL 4809844, *6 (E.D.Va. Sept. 26, 2014) (slip copy). In determining the appropriate sanction, the Court should consider the extent of the sanction as it compares to the attorney's conduct in the case. *Baker v. Cage (In re Whitley )*, 737 F.3d 980, 987–88 (5th Cir.2013).

 While no disciplinary matters have previously been initiated against Zooberg in this Court, it is axiomatic that Zooberg's conduct in this one particular case is especially egregious.[58] The Court concludes that Zooberg should be suspended from practice before this Court for a period of sixty (60) days, commencing April 1, 2015. The Court finds that the length of suspension here is consistent with other disciplinary suspensions meted out in the Eastern District of Virginia. *See, e.g., In re Parker*, No. 3:14cv241, 2014 WL 4809844, *6 (E.D.Va. Sept. 26, 2014) (slip copy) (affirming the bankruptcy court's suspension of the attorney for a period of four months); [59] *see also In re Tran*, 2014 WL 5421575, at *10 (suspending the attorney for a period of three

---

**58.** The Court has given due consideration to the absence of any prior discipline in this Court against Zooberg; however, the Court also is mindful of the words of the late Senator Lloyd Bentsen, who, when confronted at the 1988 Vice–Presidential Debate with an example of an especially crass campaign fundraising event he undertook, aptly commented: "I don't make many mistakes, but that one was a real doozy." Senator Lloyd Bentsen, Vice–Presidential Debate, (Oct. 5,

1988), *available at* http://www.debates.org/index.php?page=october–5–1988–debate–transcripts (last visited Mar. 18, 2015).

**59.** Judge Payne remarked in *In re Parker* that the four month suspension ordered by the Bankruptcy Court "was quite lenient when measured against the conduct that necessitated the suspension." *In re Parker*, 2014 WL 4809844, at *6 n. 7.

months). The Court concludes that Zooberg and the Boardman Firm should pay a fine of $1,000.00, for which they are jointly and severally liable, to T.H, representing the disgorgement of the fee paid by Blum for the filing of the Petition in this case. The Court finds that the sanction against Zooberg is the appropriate sanction designed to deter Zooberg, Boardman, and other attorneys who practice before this Court from repeating the most disturbing conduct in this case. This sanction shall be paid in full to T.H. within thirty (30) days. The sanction is not punitive but is the appropriate measure to provide Zooberg and the Boardman Firm an opportunity to ensure that their conduct in all of their future cases before this Court is commensurate with the expectations and obligations of practice in this Court.

This Court takes no pleasure in disciplining attorneys who practice before it, but it is a most vital exercise of discretion to ensure the preservation of the integrity of the system. This Court relies on the veracity of the representations made by the professionals who practice before it, and it is essential to the honor of the system that the Court may do so confidently. The sanctions imposed in this case against Zooberg and the Boardman Firm are the most appropriate and reserved sanctions that this Court can impose to ensure that the egregious conduct and misrepresentations in this case are not repeated by any member of the Boardman Firm or any other attorney or firm that practices before this Court.

The Clerk shall transmit a copy of this Memorandum Opinion to T.H.; Peter F. Zooberg, Esquire; Philip R. Boardman, Esquire; Carl A. Eason, Esquire; Cullen D. Speckhart, Esquire; Judy A. Robbins, United States Trustee for Region Four; Cecilia A. Weschler, Esquire, counsel for the United States Trustee; and Michael P. Cotter 13 Trustee.